| 90 | 653 |
| s106 | 552 |
| s106 | 553 |

## St. Louis, Peoria & N. Ry. Co. v. Eliza Rawley, Adm'x, etc.

1. RAILROADS—*Not Chargeable for Weeds Growing Outside of the Right of Way.*—A railroad company is not chargeable for weeds growing on the sides of an approach, but not upon its right of way, and evidence of such matter is not admissible to prove negligence on the part of the company.

2. DAMAGES—*To Next of Kin in Actions for Death from Negligence.*—The damage to be recovered by lineal descendants in an action for death from negligence of the defendant, is pecuniary only, and not affected by the fact that the deceased supported his family, or by the number of them supported.

3. INSTRUCTIONS—*As to Ringing the Bell and Blowing the Whistle.*—In an action against a railroad company for killing a person at a highway crossing an instruction to the jury " if they believe, * * * that as the defendant's engine and cars reached said highway crossing, the bell on the engine was not being rung continuously or the whistle was not being continuously sounded, and that neither the bell nor whistle was continuously sounded for eighty rods from said crossing and until the crossing was reached," is misleading, as the statute does not require that the bell shall be continuously rung, or, if not, that the whistle shall be continuously sounded.

Trespass on the Case.—Death from negligence, etc. Appeal from the
City Court of East St. Louis; the Hon. SILAS COOK, Judge, presiding.
Heard in this court at the February term, 1900. Reversed and remanded.
Opinion filed September 8, 1900.

Statement.—This is an action brought by Eliza Rowley,
administratrix of Edward Rowley, who was killed by the
defendant's train at the crossing of the track upon which
its train was running northward on the evening of July 16,
1898, at or near ten P. M., said crossing being over a public
highway.

The declaration contained three counts:

The first charged that defendant's servants, carelessly
and negligently, and without any signal or warning of the
approach of the engine to said crossing, ran a north-bound
train upon the crossing at a high rate of speed, and struck
the surrey and killed the deceased, etc.

The second count charged a failure of defendant's serv-
ants in charge of its train to give the statutory signals by
either bell or whistle.

The third count alleges failure to give statutory signals
and also that defendant had negligently suffered weeds and
shrubs to grow along its right of way at and near said
crossing, so that a person approaching the crossing could
not see the approach of an engine until so near the tracks
as to be in danger of being struck by the train, and that
deceased on that account was unable to see the approach of
the train until too late to avoid the collision, which negli-
gence of the defendant directly contributed to cause his
death, etc.

The plea was the general issue.

At the place where the accident occurred there are two
parallel railroad tracks, 100 feet apart, running north and
south. The train which struck the deceased was going
north on the west track of these two tracks. Another rail-
road track, referred to as the Wabash, running east and west,
crosses these parallel tracks. The highway crosses the
track on which appellant's train was running, about ninety
feet south of where the Wabash track crosses it. The stop
for the Wabash crossing was about 200 feet south of the

Wabash crossing and about 100 feet south of the highway crossing. The train had made the statutory stop for the Wabash crossing, and was running at from four to six miles an hour when the deceased was struck. It stopped about fifty feet from the place of the collision. Witnesses for the plaintiff testified that the embankment upon which the railway track runs ranges in height from ten to fourteen feet above the general surface of the ground; that weeds in height from seven to eleven feet, beginning within four or five feet of the west rail of the track, ran back from the track along the sides of the road from ten to fifty feet; that approaching the track from the west, the ascent of the public road was fifteen or twenty feet, to reach the surface of the crossing; that along this ascent, on either side of the road, these weeds grew, so that when going up the ascent to reach the track surface, a person in a buggy, especially if close to the side of the road, could not see over the weeds.

This condition is denied by witnesses for appellant and photographs introduced in evidence attached to the record.

The deceased was a switchman and resided about three-quarters of a mile from the crossing. At the time of the accident he was driving a buggy in company with a young lady, and going in a northeast direction. The fireman was on the side next to the approach by which the buggy came to the track. He testifies that the deceased was facing the woman in the buggy, with his back toward the engine, and that he "hollered" to him when he saw the horse coming up on the track, and to the engineer to stop; that the air-brakes were applied, but the train could not be stopped in time; the buggy was struck, but the horse passed over, and was grazing shortly afterward; the train was brought to a stop about fifty feet from the place of the collision. The engineer testifies that he first saw the horse's head about twenty feet in front; that the wreck of the buggy was on the pilot, the lady underneath the pilot, and the man underneath the fire-box.

Conkling & Grout and Freels & Joyce, attorneys for appellant.

A. R. TAYLOR, attorney for appellee.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

The evidence as to ringing the bell and sounding the whistle, as is common in cases of this character, is conflicting and irreconcilable. It is a case where instructions should be accurate, and the rules of evidence strictly applied. The right of way of the track upon which plaintiff in error's train was running, belonged to the C. P. & St. L. Ry. Co., which company managed and cared for it, defendant in error paying for using the rails upon a wheelage basis. This fact would not, however, excuse defendant in error for damages caused by the condition of the right of way. When it, as a common carrier, used the tracks upon such right of way, it became liable for damages caused by its improper condition to the same extent as if it owned or leased it. No objection was made to the introduction of evidence showing the presence of weeds and shrubs in the vicinity of the crossing, for the limited purpose of bringing before the jury the general environment and surroundings. But objection was made to the introduction of such evidence generally, to prove negligence on the part of defendant in error. As no evidence was introduced to show the width of the right of way, and as defendant in error was not chargeable for weeds growing on the sides of the approach but not on the right of way, the objection to the introduction of such evidence to prove negligence should have been sustained. This evidence having been improperly admitted for all purposes, the court should have given the sixth instruction asked by plaintiff in error, which would have limited its effect.

It is urged as error, that over the objections of plaintiff in error, defendant in error, the widow of the deceased, was allowed to testify as to who supported her and her children. After stating that she was the wife of Edward Rawley, and what he earned as switchman, she was asked:

Q.   Well, who supported you?

St. Louis, P. & N. Ry. Co. v. Rawley.

Objected to by defendant. No ruling shown.

Q. Who supported them before his death, before he was killed?

Objected to by defendant, objection overruled and exception noted.

A. He did.

Q. Now I will ask you how many children were left at the time of the death of Mr. Rawley? A. Seven.

Q. What were their respective ages? A. One is seventeen now.

The witness then in answer to questions gave the ages and sex of the other children at the time of the death of their father, ranging from seventeen years to an infant four weeks old.

In overruling the objection to the question "who supported them before he was killed," followed as it was by a detail of the ages of the children, the court erred. It was not necessary that a reason for the objection should have been stated. It was not a question, objectionable for form, that could have been cured by a change of form. It called for incompetent testimony. Under repeated rulings of the Supreme Court, the damage to be recovered in an action of this kind, by lineal descendants, is pecuniary damage only, and this is not affected by the fact that the deceased supported his family, or by the number of them supported. An introduction of evidence of this character tends to awaken the sympathy of the jurors for the bereaved, and to warp their judgment upon controlling issues in the case.

For the same reason the words in defendant's first instruction "for the loss of his care, maintenance and support," should not have been given. C. P. & St. L. Ry. Co. v. Woolridge, 174 Ill. 330.

The instruction to find for defendant was properly refused, there being evidence that warranted a submission of the case to the jury.

A part of the second instruction given for defendant in error is faulty. The part referred to is as follows:

"And if the jury further believe from the evidence in this

case that as defendant's engine and cars approached and reached said highway crossing the bell on the engine was not being continuously rung, or that the whistle on the engine was not being continuously sounded, and that neither the bell nor whistle was sounded continuously for eighty rods from said crossing, and until said crossing was reached by said engine."

This instruction is misleading. The statute does not require that the bell shall be continuously rung, or if not, that the whistle shall be continuously sounded. If the bell is rung a part of the required time, and the whistle sounded for the remainder of the time, the statute is complied with.

For the reasons assigned, the judgment is reversed and the case remanded.