17108.   WESTERN & ATLANTIC RAILROAD *v.* COCA-COLA BOTTLING WORKS.

1. There was no error of omission or commission in the charge of the court when read in its entirety, and it was in every respect fair to the defendant company. Nor was it error to refuse certain requests to charge.

2. There was ample evidence to authorize the jury to find that the defendant company was negligent in failing to keep the public crossing properly repaired; that its servants, in the operation of its train, failed to exercise due care in approaching the crossing; that the defendant's negligence in these respects was the proximate cause of the injury for which suit was brought; and that the driver of plaintiff's truck, by the exercise of ordinary care, could not have avoided the consequences of the defendant's negligence.

3. The court properly overruled the motion for a new trial.

DECIDED MAY 12, 1926.

Action for damages; from Whitfield superior court—Judge Tarver.   December 12, 1925.

*Tye, Peeples & Tye, Neel & Neel, Maddox, Maddox & Mitchell,* for plaintiff in error.

*W. E. & Gordon Mann,* contra.

LUKE, J. Coca-Cola Bottling Works brought suit against Western & Atlantic Railroad for damage to a truck by reason of the defendant company's train striking the truck at a certain public crossing.   A verdict was rendered for the plaintiff, and, upon de-

---

Railroads, 33 Cyc. p. 1087, n. 38; p. 1088, n. 39; p. 1093, n. 63.

Trial, 38 Cyc. p. 1518, n. 69; p. 1711, n. 19; p. 1778, n. 73; p. 1779, n. 75, 76.

fendant's motion for a new trial being overruled, the case was brought to this court.

As stated in the brief of counsel for the plaintiff in error, "one of the main insistencies of the defense in this case was that, if there was any negligence on the part of the employees [of the railroad company], the plaintiff's agent, by the exercise of ordinary care, could have avoided the consequences of the negligence and the injury." All the special grounds of the motion for a new trial are directed against the charge of the court. We have carefully reviewed the court's charge, and we find that when read in its entirety it is in every respect fair to the defendant company, and fully presented to the jury the law relative to the contentions of the defendant. The court charged the jury that "No matter what the negligence of the defendant or its employees may have been, if the driver of the truck, by the exercise of ordinary care for its safety, could have avoided the consequences of the defendant's negligence, the plaintiff is not entitled to recover." The court charged this principle of law eight times, and it was certainly sufficiently impressed upon the minds of the jury. The court charged fully upon the degree of diligence that must be exercised by one on a public road approaching a railroad crossing, and further charged that it must appear that any act or omission on the part of the railroad company "was a negligent act, and that the injury or damage sustained by plaintiff's automobile truck was received as the proximate result thereof."

There was ample evidence to show that the railroad company was negligent in not having its track filled in properly at this public crossing. Indeed, one of defendant's witnesses testified that the defendant company had been working on the crossing and left it in an incomplete state, saying, we "wasn't done work on it. We did not want to leave it in that incomplete way, we were going to complete it. . . We did fix it afterwards." There was evidence to show that the space between the rails at this public crossing was unusually and unnecessarily low, and that in this space were loose rocks; that the front wheels of the plaintiff's truck mounted the rail, dropped down between the rails in these loose rocks, stalled momentarily, and was hit by defendant's train before it could pull out. Defendant's witness testified: "When he [the driver of plaintiff's truck] got on the main line, looked like his car was

killed or something, and he sort of went back. . . It seemed to roll back a little piece, and about the time it started the other way we hit it." There was also evidence that two Ford cars had stalled on this same public crossing just the day before this truck was hit, and that the crossing was in a dangerous condition.

Furthermore, the jury were authorized to conclude, from the evidence, that the servants of the defendant company failed to exercise due care in approaching the public crossing. A witness for the defendant testified: "The track is straight north of the crossing for a distance of 792 feet. . . The engineer could see a man approaching it after he gets around the curve on the straight, about 792 feet. If a truck was approaching that crossing when he was at that point he could see it approaching 792 feet. It is straight from the crossing that distance. . . There was nothing to obstruct the view *if he had been keeping a lookout* down that way." The credibility of this evidence was a matter within the province of the jury. From this evidence they could have concluded that whether the truck was approaching the crossing or was on the crossing, the engineer and the fireman could have seen it 792 feet before they got to it, if they had been keeping a lookout; and other evidence shows that the train could have been stopped in 220 feet.

There is sufficient foundation for the finding that the negligence of the defendant company in failing to keep in proper repair its track at the public crossing, and in failing to exercise due care in approaching the public crossing, was the proximate cause of the injury.

There was also evidence to show that the driver of plaintiff's truck could not, by the exercise of ordinary care, have avoided the consequences of defendant's negligence. According to the testimony he could not have seen the condition of this public crossing until he was practically right upon it. The dirt road along which he was traveling ran parallel with the railroad and was very much lower than the railroad, some of the evidence showing as much as 20 feet lower. Just before crossing the railroad track where the injury occurred, he had to make a sharp turn and go up a steep incline, on the top of which was the defective public crossing. This gave him no opportunity to detect its dangerous condition until he was right upon it. These peculiar physical conditions, with

which the defendant company was necessarily familiar, made a defective public crossing at this point all the more dangerous. There was also some evidence to show that the noise made by the truck, and the fact that the truck, before making the sharp turn to go up the incline, was considerably below the railroad track, prevented the driver of the truck from knowing of the approach of the train.

The court properly overruled the motion for a new trial. See Civil Code, § 2673; *Ga. R. &c. Co.* v. *Wallis*, 29 *Ga. App.* 706 (116 S. E. 883); *Ga. R. &c. Co.* v. *Ralston,* 29 *Ga. App.* 720 (116 S. E. 891); *Davis* v. *Whitcomb, 30 Ga. App.* 497 (118 S. E. 488).

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*